Jesse Swanhuyser (State Bar No. 282186)
ANACAPA LAW GROUP, INC.
508 East Haley Street
Santa Barbara, CA 93103
Tel: (805) 689-1469
Email: jswanhuyser@anacapalawgroup.com

Attorney for Plaintiff
COMMITTEES FOR LAND, AIR, WATER AND SPECIES

Stephen R. Onstot (State Bar No. 139319)
Aleshire & Wynder LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245
Tel. (310) 527-6660
Fax. (310) 532-7395
Email: sonstot@awattorneys.com

Attorney for Defendant
CITY OF LOMPOC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEES FOR LAND, AIR, WATER AND SPECIES, a California public benefit corporation,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>CITY OF LOMPOC, a California municipal corporation,<br><br>　　　　Defendant. | Case No.: 2:17-cv-04902-PLA<br><br>**[PROPOSED] CONSENT DECREE AND ORDER**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)**<br><br>Magistrate Judge: Paul L. Abrams |

**WHEREAS,** COMMITTEES FOR LAND, AIR, WATER AND SPECIES, ("CLAWS") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Barbara, California;

**WHEREAS,** CLAWS is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Santa Barbara County from all sources of pollution and degradation;

**WHEREAS,** the CITY OF LOMPOC ("City" or "Lompoc") owns and operates an industrial facility subject to the stormwater permitting provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA") at 1300 West Laurel Avenue in Lompoc, California ("Corporate Yard" or "Facility");

**WHEREAS,** on April 26, 2017, CLAWS sent a sixty (60) day Notice of Violation and Intent to File Suit letter ("Notice Letter") to Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), stating its intent to file suit for alleged violations of the Clean Water Act. The Notice Letter alleged violations of the CWA for Defendant's alleged discharges of pollutants into storm drains and receiving waters, including San Miguelito Creek, the Santa Ynez River and Pacific Ocean in alleged violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 97-03-DWQ ("1997 Permit"), as superseded by Order No. 2014-0057-DWQ ("2015 Permit"). The 1997 Permit and/or 2015 Permit may be referred to generically as the "Storm Water Permit";

**WHEREAS,** since receiving the Notice Letter, Lompoc made significant efforts to review and improve stormwater management practices at the Corporate Yard, including installation of new stormwater management equipment and procedures;

**WHEREAS,** CLAWS and the City have been engaged in comprehensive, good-faith settlement negotiations, including a site visit to the Facility on July 28, 2017, where

CLAWS was able to inspect site conditions and the discuss stormwater management options with City personnel;

**WHEREAS**, on July 4, 2017 CLAWS filed a complaint ("Complaint") against Defendant in the United States District Court, Central District of California;

**WHEREAS**, the Defendant denies all allegations of the Complaint;

**WHEREAS**, Plaintiff and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. CLAWS has standing to bring this action; and

5. The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, for as long as is necessary for the Court to resolve any motion to enforce this Consent Decree.

# I. OBJECTIVES

6.      It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by CLAWS in its Complaint.  These objectives include improved water quality through compliance with the provisions of this Consent Decree, and compliance with the requirements of the 2015 Permit and all applicable provisions of the CWA which are the subject of this Consent Decree—specifically Receiving Water Limitations A, B and C at Section VI of the 2015 Permit, and Effluent Limitations A, B and C at Section V of the 2015 Permit, which require, *inter alia*, that Defendant ensure that industrial storm water discharges and authorized non-stormwater discharges do not cause or contribute to an exceedance of any applicable Water Quality Standards ("WQS"), and implement Best Management Practices ("BMPs") that comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") standards.  BMPs must be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the Facility in compliance with this Consent Decree.

# II. EFFECTIVE DATE AND TERMINATION

7.      The term "Effective Date," as used in this Consent Decree, shall mean the date the Court enters the final Consent Decree.

8.      This Consent Decree will terminate on its own terms four (4) years from the Effective Date (the "Termination Date"), unless there is a significant, prior, ongoing, unresolved dispute regarding Defendant's compliance with its terms as described in a Notice of Dispute identifying the issue(s) in dispute and filed with the Court prior to the Termination Date.  The filing of such a Notice of Dispute shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case, or, alternatively, if the Settling Parties file a stipulation for dismissal.

9.     Lompoc may move the Court to terminate the Consent Decree at any time provided that the following conditions, or such alternative conditions to which the Parties agree in writing after compliance with the meet and confer provisions of paragraph 42 below, are satisfied:

a. Defendant has fully implemented all measures detailed in paragraph 15 below, and other applicable requirements under this Consent Decree prior to the date on which the Defendant moves for termination;

b. Defendant has revised and fully implemented its Storm Water Pollution Prevention Plans ("SWPPP") and Monitoring and Reporting Programs ("M&RP") pursuant to the requirements of this Consent Decree and the 2015 Permit;

c. There are no significant, ongoing, unresolved disputes regarding Defendant's compliance with this Consent Decree, including but not limited to any significant dispute related to the payment of fees/costs, Supplemental Environmental Project ("SEP") payment(s), compliance monitoring fees, implementation of storm water and non-storm water control BMPs, and compliance with numeric levels detailed below at Table 1;

d. All payments required under paragraphs 34, 35, 37 and 38 of this Consent Decree are made; and

e. From the Effective Date of this Consent Decree through the Termination Date, monitoring data from four (4) consecutive storm water samples from Qualifying Storm Events as defined in the 2015 Permit collected at each discharge point demonstrate pollutant concentrations in stormwater discharges do not exceed the numeric levels in Table 1;

10.     To terminate early as provided above, Defendant shall file a motion for early termination with the Court. Defendant shall provide Plaintiff and its counsel with

written notice at least thirty-five (35) days prior to filing any motion for termination of the Consent Decree.

11.     Upon receipt of the written request to terminate, CLAWS may conduct an inspection of the Facility within thirty (30) calendar days and Lompoc will work with CLAWS to schedule and accommodate the inspection, if requested, within the 30-day period.  During the Site Inspection, Defendant shall allow CLAWS and/or its representatives access to the Facility's SWPPP, M&RP, storm water monitoring and other relevant records.  Further, during any site inspection under this paragraph, Plaintiff and Defendant may collect and split samples of any stormwater or non-storm water discharges. CLAWS shall be permitted to take photographs and/or conduct video recording during any Site Inspection and will, upon request, provide photographs and/or video to Lompoc within fourteen (14) calendar days.  Notwithstanding the foregoing, CLAWS agrees that all individuals participating in any Site Inspection will execute, and be subject to, waivers, releases and similar agreements as were executed in connection with the Site Inspection conducted on July 28, 2017.  CLAWS shall pay 100% of all costs associated with any inspection pursuant to this paragraph.

12.     Unless there is a significant, ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, thirty-five (35) calendar days after written notice was given, Defendant may move the Court to terminate the Consent Decree and CLAWS shall not oppose the motion.

## III.     COMMITMENTS OF THE PARTIES

### A.     Storm Water Pollution Control Measures and Procedures

13.     Any non-stormwater discharges ("NSWDs") from the Facility must be authorized by the 2015 Permit or another NPDES permit.

14.     All storm water pollution measures required by this Consent Decree will be implemented and maintained at the Facility unless substantial alterations of the site render them inappropriate. Any disputes over the adequacy and/or timing of the

implementation of BMPs shall be resolved pursuant to the dispute resolution provisions set out in Section IV below.

15. **BMP Plan.** Lompoc has implemented (or will implement in connection with the sampling and discharge points depicted in the site map attached hereto as Exhibit A) the following additional physical and procedural BMPs by March 31, 2018, or ten (10) calendar days after the Effective Date of this Consent Decree, whichever occurs later;

a. Extend existing concrete curbing in front of the used oil collection container to encircle and capture any spillage or leaks that occur during deposit and removal of used oil;

b. Weekly or more regular inspection and maintenance of used oil collection container and surrounding area (with contemporaneous record keeping), including any additional refuse or other containers adjacent to or used in connection with oil collection;

c. Mondays through Fridays, immediate removal of all oil leaks and spills near the used oil collection container, and thorough cleaning of any remaining stains so as to allow the identification of new spills/leaks (with contemporaneous record keeping);

d. On operational days, placement of drip pans under any and all equipment and vehicles awaiting service;

e. Limit stencil cleaning (and any associated painting) to periods with minimal wind so as to prevent aerial dispersion of debris created during stencil cleaning process;

f. Completely clean stencil/stencil cleaning area by thorough and appropriate sweeping within 30 minutes of any stencil cleaning;

g. During inclement weather (i.e. greater than 50% chance of precipitation), install and maintain weighted Filtrexx-Envirosox (or equivalent) perpendicular to stormwater flows at the cut-out in the wall at Discharge Point 1; in a circular pattern at Discharge Points 2 and 3;

h. Any and all oil, which is stored, for any length of time, on-site and outside of structures, shall be properly contained. Proper containment shall either be: placement inside a closed container which incorporates secondary containment, or on a containment pallet with adequate containment volume, placed in an easily accessible location, and protected from vehicle traffic;

i. Quarterly evaluation of the condition of tarps and other temporary covers (and replacement as appropriate) used to cover bins containing any discarded equipment or parts, including but not limited to the tarp covering used automotive parts noted on the site map;

j. Monthly (or more as needed) sweeping of the Facility's exterior ground surfaces using a mechanical street sweeper;

k. Between October 1 and March 30, sweeping of the exterior of the Facility's ground surfaces using a mechanical street sweeper whenever a 70% or greater change of rain is forecast for the following two days;

l. Thorough and complete hand sweeping of areas that are not accessible to the City's mechanical street sweepers (e.g. behind storage container in stenciling area, around/under storage areas) twice annually—once during the first ten days of October, and again during the first ten days of January;

m. Additional hand sweeping as necessary for areas that are not accessible to the City's mechanical street sweepers between October 1 and March 30;

n. Redirect any and all downspouts away from used oil storage areas;

o. Install Filtrexx Envirosox (or equivalent) for all areas where used oil is stored to provide additional contaminant containment unless demonstrated to have no benefit to water quality;

p. Maintain daily rainfall data using a rain gauge within two (2) miles of the Facility.

16.     City shall immediately clarify existing Facility-wide policies summarized below for all staff in affected departments, and maintain records specific to violations of the policies:

a.     prohibition on the storage of organic debris (e.g. dirt, leaves, mulch, wood chips) and other material (e.g. scrap metal, industrial parts, fasteners, etc.) in vehicles, trailers, equipment or other location unless covered sufficiently (e.g. with tarps) to prevent contact of pollutants from such sources with storm water;

b.     requirement to remove mud and other organic debris from automobiles and equipment prior to returning to the Facility from the field.

17.     Failures to effectively enforce the policies summarized in paragraph 16 constitute violations of this Consent Decree.

**B.     Monitoring and Reporting Program (M&RP)**

18.     <u>Sample Frequency</u>.  Lompoc shall collect storm water samples in accordance with the 2015 Permit (or subsequent re-issuance). Any failure to sample a discharge from each discharge location until the specified four (4) qualifying storm

events per Reporting Year (i.e. two (2) between July 1 and December 31 and two (2) between January 1 and June 30) have been sampled shall be documented.

19. <u>Sample Analysis</u>. Lompoc shall collect and analyze samples in accordance with sampling and analysis procedures specified by the General Permit from each of the Discharge Points identified on the Site Map for Total Suspended Solids ("TSS"), pH, and Oil & Grease ("O&G") as well as additional constituents required by the Permit or delineated in Table 1.

20. <u>Revising the M&RP.</u> Within thirty (30) calendar days of the Effective Date, Lompoc shall revise its M&RP within its SWPPP to incorporate the requirements of this Consent Decree and the 2015 Permit; and submit the revised M&RP to CLAWS for review and comment. CLAWS shall provide comments, if any, to the Defendant within thirty (30) calendar days following receipt.

**C. Numeric Limits**

21. <u>Numeric Limits.</u> If sampling results show two or more exceedances of Table 1's numeric limits at any one Discharge Point during a Reporting Year, the Parties shall comply with requirements specified below in paragraphs 22 through 26.

**TABLE 1. NUMERIC LIMITS**

| Contaminant | Numeric Limits |
|---|---|
| TSS | 100 mg/L |
| pH | 6.0-9.0 S.U. |
| O&G | 15 mg/L |

22. <u>Action Plan for Table 1 Exceedances during the Consent Decree.</u> In any Reporting Year during which sampling at any one of the Discharge Points demonstrates two (2) or more exceedances of numeric limits in Table 1, Lompoc shall prepare and submit a plan for reducing and/or eliminating the discharge from relevant Discharge Point(s) of those pollutants exceeding their respective numeric limits ("Action Plan") to CLAWS by July 15 following the Reporting Year in which the exceedances giving rise to the obligation to submit an Action Plan occurred.

23.     Action Plan Requirements.  Each Action Plan submitted shall be in writing and shall include, at a minimum: (1) the identification of the pollutant(s) exceeding Table 1's numeric limits, (2) a comprehensive assessment of the source of each exceedance, (3) the identification of revised and/or additional BMPs that will be implemented to achieve compliance with the respective numeric limits, and (4) time schedules for implementing proposed BMPs, which shall not exceed the following October 1 unless otherwise agreed by the Parties in writing.

24.     Action Plan Review.  CLAWS shall have 30 days upon receipt of an Action Plan to provide Defendant with comments thereon.  Within 30 days from the date of receipt of CLAWS' written comments on Defendant's Action Plan, Defendant shall provide CLAWS with a written response, including, if applicable, a reasoned explanation as to why Defendant is not incorporating any particular comment into its Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions set out in Section IV below.

25.     If any structural BMPs require any government agency approval, then Defendant shall contact CLAWS to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval.  CLAWS shall not unreasonably withhold consent to such an extension request.

26.     Defendant shall have until November 1 following the Reporting Year in which the obligation to submit an Action Plan occurred to implement the Action Plan. Defendant shall notify CLAWS in writing when the Action Plan has been implemented.

**D.     Storm Water Pollution Prevention Plan**

27.     SWPPP Revisions.  Within sixty (60) calendar days of the Effective Date, Defendant shall revise the SWPPP to comply with Section X.A-I of the 2015 Permit and this Consent Decree, including BMPs cataloged in paragraph 15. The Defendant shall submit the revised SWPPP to CLAWS for review and comment as soon as it is completed, but in any event no later than sixty (60) calendar days following the

Effective Date. CLAWS shall provide comments, if any, to Defendant within thirty (30) calendar days of receipt of the SWPPP. Defendant shall incorporate Plaintiff's comments into the SWPPP, or explain in writing why any comment is not incorporated, within thirty (30) calendar days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions set out in Section IV of this Consent Decree.

## E. Employee Training

28. Within ninety (90) calendar days of the Effective Date, Defendant shall review and revise its employee training program established in its SWPPP to comply with the requirements of this Consent Decree and the 2015 Permit, including any training materials, as necessary, for implementation of the training program ("Training Program").

29. The Training Program shall provide (a) that there be a sufficient number of employees delegated to achieve compliance with the General Permit and this Consent Decree, (b) that these employees are properly trained (initially and annually thereafter) and authorized to perform the required compliance activities under the 2015 Permit and this Consent Decree, and (c) that all affected department and division heads are given notice of both physical and procedural BMPs.

30. The Training Program shall require specific training to include at least the following:

a. <u>Non-Storm Water Discharge Training.</u> The Defendant shall train all affected employees[1] about the 2015 Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are, how to detect them, and how to prevent them;

---

[1] Employees excluded from this category are those in departments whose activities have no possible effect on the quality of stormwater discharges from the Facility, and include, but may not be limited to, Economic & Community Development, Library, Engineering, Planning, Building, Treasury, Human Resources and Finance.

b. <u>BMP Training</u>. The Defendant shall train all affected employees responsible for BMP implementation and maintenance to ensure that BMPs are used effectively to prevent the exposure, discharge, and/or treatment of storm water at the Facility.

c. <u>Sampling Training</u>. The Defendant shall train all individuals collecting samples at the Facility pursuant to this Consent Decree or the 2015 Permit on proper sampling protocols, including chain of custody requirements, to ensure storm water and/or non-storm water samples are properly collected, stored, and submitted to a certified laboratory;

d. <u>Visual Observation Training.</u> The Defendant shall provide training to all affected individuals performing visual observations at the Facility pursuant to this Consent Decree and the 2015 Permit.

31. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the 2015 Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the 2015 Permit, and the Facility's SWPPP, and at least annually thereafter. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP or the M&RP.

32. The Defendant shall plan and hold an Annual Stormwater Management Training between August 1 and October 10 of each year during the term of this Consent Decree, and shall invite CLAWS to audit such training at CLAWS' sole expense. The Defendant shall maintain training records to document compliance with this paragraph.

33. <u>Annual Site Inspections</u>. CLAWS may conduct one annual site inspection ("Site Inspection") on terms substantially identical to those agreed to by the Settling Parties for the July 28, 2017 site visit. Site Inspections shall occur during normal business hours, and CLAWS will provide Lompoc with as much notice as possible, but

at least twenty-four (24) hours notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours notice during dry weather.  Notice will be provided by telephone and electronic mail.

### F. Compliance Monitoring and Reporting

34.  <u>CLAWS' Compliance Monitoring</u>. Defendant shall pay a total of five thousand dollars ($5,000) to compensate CLAWS for costs and fees to be incurred for monitoring Defendant's compliance with this Consent Decree. Payment shall be made within fifteen (15) days of the Effective Date payable to "Committees for Land, Air, Water and Species" addressed to: <u>CLAWS, 133 E. De La Guerra, PMB BOX # 164, Santa Barbara, CA 93101</u>, and sent via courier or overnight delivery. Failure to submit payment as required under this paragraph will constitute a breach of the Consent Decree.

35.  <u>Action Plan Payments</u>. Defendant shall compensate CLAWS for each Action Plan on which the organization submits written, substantive comments under paragraph 24 above in the amount of $250.00.  Payment shall be made within fifteen (15) days of the Effective Date payable to "Committees for Land, Air, Water and Species" addressed to: <u>CLAWS, 133 E. De La Guerra, PMB BOX # 164, Santa Barbara, CA 93101</u>, and sent via courier or overnight delivery. Failure to submit payment as required under this paragraph will constitute a breach of the Consent Decree.

36.  <u>Document Provision</u>. Upon written request, Defendant shall promptly provide CLAWS with an electronic copy of documents relevant to its compliance with this Consent Decree and 2015 Permit, including any monitoring data, inspection reports, training records, unprotected internal and external communications, and similar documentation.  City designee responsible for responding to document production requests made pursuant to this paragraph: Teresa Gallavan, Interim City Manager, (805) 875-8212, t_gallavan@ci.lompoc.ca.us.

### G. Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Penalties

37.    Environmental Project. The Defendant agrees to make a payment of fifteen thousand dollars ($15,000) within thirty (30) calendar days of the Effective Date to The Rose Foundation for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological and/or public health effects of storm water and/or non-stormwater discharges into Central Coast area water bodies.  The payment shall be mailed via certified mail or overnight delivery to Tim Little, Rose Foundation for Communities and the Environment, Attn: CLAWS v. City of Lompoc Receiver, 1970 Broadway, Suite 600, Oakland, CA 94612-2218.  Defendant shall provide CLAWS with a copy of such payment.

38.    Reimbursement of Plaintiffs' Fees and Costs. The Defendant agrees to partially reimburse Plaintiff for its investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter up to the date of entry of this Consent Decree in an amount totaling twenty-five thousand dollars ($25,000).  All such payments shall be made payable to Anacapa Law Group and delivered by certified mail or overnight delivery at 508 East Haley Street, Santa Barbara, California 93103.

### H. Agency Review of Consent Decree

39.    Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (the Federal Agencies), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant.  In the event that the Federal Agencies object to

entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

## IV.  DISPUTE RESOLUTION

40.  This Court shall retain jurisdiction over this matter for the purposes of adjudicating all significant disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

41.  <u>Meet and Confer</u>.  Either party to this Consent Decree may invoke the dispute resolution procedures of this Section by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution under this Section.  The Parties shall then meet and confer in an attempt to resolve the dispute no later than thirty (30) calendar days from the date of the notice. In the event that any dispute involves an interpretation, modification, or the taking of an action that may be inconsistent with any permit or directive of a regulatory agency with appropriate jurisdiction, the provisions of such permit or directive shall govern unless and until the dispute resolution process set forth in this Section IV is concluded.

42.  If the Parties cannot resolve the dispute within 30 days after the meet and confer described in paragraph 41, the Parties agree to request a settlement meeting before the Judge assigned to this action.  In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Judge, the Parties agree to submit the dispute via motion to the District Court.

43.  In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party.  The relevant portions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure and applicable case law interpreting such provisions shall govern the allocation of fees and costs in connection with the resolution of any disputes before the

District Court.  Plaintiff and Defendant agree to file any waivers necessary for the Judge to preside over any settlement conference and motion practice.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

44.    In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the parties' failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Termination Date of this Consent Decree.

45.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's or Defendant's respective rights to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any matter relating to the Defendant.

46.    Neither this Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

47.    Force Majeure. The Defendant shall notify CLAWS pursuant to the terms of this paragraph, when timely implementation of the requirements set forth in this Consent Decree becomes impossible, despite the timely good-faith efforts of the Defendant, due to circumstances beyond the reasonable control of the Defendant or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendant.  Any delays due to Defendant's failure to make timely and bona fide applications and to exercise diligent efforts to obtain necessary permits, or due to normal inclement weather, shall not, in any event, be

considered to be circumstances beyond Defendant's control.  In no circumstances shall a claim of inability to pay be considered Force Majeure.

a.     If the Defendant claims impossibility, it shall notify CLAWS in writing within twenty-one (21) calendar days of the date that the Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section.  It shall describe: i) the anticipated length of time the delay may persist; ii) the cause or causes of the delay; iii) the measures taken or to be taken by the Defendant to prevent or minimize the delay; iv) the schedule by which the measures will be implemented; and v) the anticipated date of compliance. The Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b.     The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of the Defendant, due to circumstances beyond the control of Defendant that could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendant, the Parties shall agree upon new deadlines.

c.     If CLAWS disagrees with the Defendant's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV.  In such proceeding, the Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## VI.     MISCELLANEOUS PROVISIONS

48.     <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the 2015 Permit, the Clean Water Act, or specifically herein.

49.    <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

50.    <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51.    <u>Correspondence</u>.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular mail or electronic mail as follows:

**If to Plaintiff**:
Jesse C. Swanhuyser
ANACAPA LAW GROUP, INC.
508 East Haley Street
Santa Barbara, CA 93103
jesse@anacapalawgroup.com

*With copies to:*

Marc Chytilo, CLAWS General
Counsel
Law Office of Marc Chytilo
P.O. BOX 92233
Santa Barbara, CA 93190
marc@lomcsb.com

Michael Gibian, President
CLAWS
PMB BOX # 164
Santa Barbara, CA 93101
michaelgibian@gmail.com

**If to Defendant**:
Stephen R. Onstot
Aleshire & Wynder LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245
sonstot@awattorneys.com

*With copies to:*

Teresa Gallavan,
Interim City Manager
t_gallavan@ci.lompoc.ca.us

Larry Bean,
Utilities Director
l_bean@ci.lompoc.ca.us

Kevin McCune,
Public Works Director
k_mccune@ci.lompoc.ca.us

Stacy Lawson,
Sr. Environmental Coordinator
s_lawson@ci.lompoc.ca.us
City of Lompoc
100 Civic Center Plaza
Lompoc, CA 93436

Dirk Ishiwata, Facilities, Fleet &
Parks Maintenance Manager
d_ishiwata@ci.lompoc.ca.us
City of Lompoc
1300 W. Laurel St.
Lompoc, CA 93436

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

52. Effect of Consent Decree. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

53. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

54. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

55.   Underlined Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

56.   Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

57.   Authority. The undersigned representatives for Plaintiff and Defendant each certify that they are fully authorized by the party whom they represent to enter into the terms and conditions of this Consent Decree.

58.   The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

59.   The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this [Proposed] Consent Decree as of the date set forth below.

ANACAPA LAW GROUP, INC.

Dated:   16 February 2018

by: _____
Jesse C Swanhuyser
Attorney for Plaintiff
Committees for Land, Air, Water and Species

CLAWS

Dated: ___ February 2018

by: _____
Marc Chytilo
General Counsel
Committees for Land, Air, Water and Species

ALESHIRE & WYNDER LLP

Dated: _15_ February 2018

by: _____
Joseph W. Pannone
Attorneys for Defendant
City of Lompoc

CITY OF LOMPOC

Dated: _15_ February 2018

by: _____
Teresa Gallavan
Interim City Manager
City of Lompoc

**IT IS SO ORDERED:**

Date:_____

_____
Honorable Paul L. Abrams
DISTRICT COURT MAGISTRATE JUDGE
CENTRAL DISTRICT OF CALIFORNIA

CLAWS

Dated: 19 February 2018

by: _____
Marc Chytilo
General Counsel
Committees for Land, Air, Water and Species

ALESHIRE & WYNDER LLP

Dated: 15 February 2018

by: _____
Joseph W. Pannone
Attorneys for Defendant
City of Lompoc

CITY OF LOMPOC

Dated: 15 February 2018

by: _____
Teresa Gallavan
Interim City Manager
City of Lompoc

**IT IS SO ORDERED:**

Date: 4/17/18

_____
Honorable Paul L. Abrams
DISTRICT COURT MAGISTRATE JUDGE
CENTRAL DISTRICT OF CALIFORNIA